UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RAUL TORRES-HERNANDEZ, on his own
behalf and others similarly situated,

                    Plaintiff,

v.                                                      Case No.  5:10-cv-40-Oc-10GRJ

FLORIDA STATE PLASTERING, a Florida
Limited Liability Company,

                    Defendant.
_____

## REPORT AND RECOMMENDATION[1]

      Pending before the Court on an Order of Reference (Doc. 21) is Plaintiff's Motion

To Conditionally Certify Collective Action And Facilitate Notice To Potential Class

Members (Doc. 20) to which Defendant filed a response in opposition. (Doc. 31.) Also

pending before the Court is Defendant's Motion To Stay Discovery As To Opt-Ins

Pending Resolution Of Motion To Conditionally Certify Or, In The Alternative, Motion

For Protective Order (Doc. 33) to which Plaintiff filed a response in opposition. (Doc.

37.)  On June 22, 2010, the Court conducted a hearing on the motions.

## I.  BACKGROUND & FACTS

      This is an action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C.

§§201-219, to recover unpaid overtime compensation allegedly owed to Plaintiff and all

similarly situated persons employed by Defendant Florida State Plastering, LLC ("FSP")

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

in Florida over the past three (3) years.  Twenty current and former FSP employees have filed Consents to Join this lawsuit. (Docs. 12-15, 28.)  Plaintiff requests that the Court issue an order facilitating notice to a class consisting of "hourly paid 'construction workers' or 'laborers' who were employed by Defendant within the statute of limitations, and who were not paid complete overtime compensation for all ours worked over forty (40) in a workweek."[2]

In support of his motion, Plaintiff has filed his own Declaration[3] as well as Declarations of six opt-in Plaintiffs.[4]  In response, FSP has filed Declarations by Ronald Bhame, the Branch Manager of FSP[5] and eight other FSP employees who are not involved in this lawsuit.[6]   The following background "facts" are taken from these various Declarations.

**_FSP_**

FSP is a subcontractor providing exterior plastering services for residential and commercial buildings.[7]  A typical plastering job consists of three separate phases –

---

[2] Doc. 20 at 1.

[3] Doc. 20, Exhibit 1 (hereinafter "Torres-Hernandez Declaration".)

[4] The following opt-in Plaintiffs filed Declarations which are attached as exhibits to Doc. 20: Jose Burgos; Tomas Garcia; Ernesto Anguiano; Enoe Rosales; Raul Salas; and Alfredo Romero

[5] Doc. 31, Exhibit A (hereinafter "Bhame Declaration"); Doc. 38 (hereinafter "Supplemental Bhame Declaration.")

[6] The following FSP employees submitted Declarations that are attached as Exhibits to Doc. 31: Mario Abrego, Foreman for FSP; Angel Hernandez, Laborer for FSP; Armando Lopez Alvarez, Laborer for FSP; Pedro Arevalo Abrego, Laborer for FSP; Lazaro Miguel Gonzalez, Laborer for FSP; Antonio Hernandez, Foreman and Laborer for FSP; Margarito Guerrero, Superintendent for FSP; and Pablo Sauli, Area Superintendent for FSP.

[7] The information regarding FSP is taken from the Bhame Declaration at ¶¶6-10, 13.

scaffolding erection around the structure, lathing the surface, and applying the stucco finish.  These different phases of work are performed by laborers.  Laborers are divided into crews of three to ten employees and supervised by a foreman.  Each crew is assigned to perform plastering work on homes within a residential community and move from home to home within the community, and then move on to the next job site. Foremen are responsible for recruiting, selecting, hiring, establishing the pay rate, scheduling, assigning work, supervising, retaining, and disciplining laborers; have the authority to terminate a laborer's employment; and control when the laborers they supervise work, the tasks they perform, and what they are paid to perform such work. Foremen report directly to a superintendent, who assigns the work for each crew  to perform and sets a budget for each house within the job site.  The budget for each house gives the foreman an estimate of how much is assigned to pay himself and the laborers for plastering work on that particular house.

### Mr. Torres-Hernandez

Plaintiff asserts that he was a laborer and that at no time was he responsible for hiring, promoting, disciplining, reprimanding, scheduling, apportioning work, or firing employees.[8]  However, Mr. Bhame avers that during the entire course of his employment with FSP, Plaintiff worked as a foreman.[9]  Two FSP superintendents who submitted declarations agree that Mr. Torres-Hernandez worked as a foreman for

---

[8] Torres-Hernandez Declaration at ¶7.

[9] Bhame Declaration at ¶11.

FSP.[10]  FSP also has offered documents submitted to the Florida Department of

Financial Services, Division of Workers' Compensation in which Plaintiff is identified as

a foreman.[11]  In addition, Mr. Bhame avers that Plaintiff received health insurance

benefits as a part of his compensation package; and that while such benefits were

provided to some foremen, they were never provided to laborers.[12]

Although Plaintiff and the six opt-in plaintiffs assert that they were paid an hourly

rate, Mr. Bhame (and the eight FSP employees who submitted Declarations), aver that

employees, including laborers and foremen, were paid on a "piece-rate" basis – i.e., a

share or "piece" of the pay allocation budgeted for each house.[13]  The price paid per

piece depends on the nature of the task – stucco pays the most, followed by lath and

then scaffolding – and the pay is calculated using a "point" system.[14]  The foremen,

including Mr. Torres-Hernandez, have complete discretion to assign a different point

value to the work of each laborer on their crew.[15]  In assigning point values, foremen

consider the skill level and experience of the laborer, the type of work he performs and

---

[10] Doc. 31-7 (Declaration of Margarito Guerrero at ¶18; Declaration of Pablo Sauli at ¶18.)

[11] Bhame Declaration, Exhibit 1.  At the hearing, over no objection, Defendant submitted for the Court's review additional records from the worker's compensation proceedings.

[12] Bhame Declaration at ¶23.

[13] Bhame Declaration at ¶14; Declaration of Mario Abrego at ¶14; Declaration of Angel Hernandez at ¶10; Declaration of Armando Lopez Alvarez ¶10; Declaration of Pedro Arevalo Abrego at ¶10; Declaration of Lazaro Miguel Gonzalez at ¶10; Declaration of Antonio Hernandez at 10; Declaration of Margarito Guerrero at ¶14; and Declaration of Pablo Sauli at ¶10.

[14] Bhame Declaration at ¶¶15-17.

[15] Id. at ¶15.

4

the quality of work he performs on the house.[16]  Foremen also assign a point value to themselves for their managerial duties and the work they perform.[17]   On average, foremen assign themselves between 14 and 18 points and assign laborers lower point totals.[18]  The dollar value for each point is based on the budget assigned to each phase of the work to be performed on the house.[19]  The foreman is responsible for submitting the point total and information on the work performed by their crew to a Superintendent for payment.[20]

        Mr. Bhame avers that although Mr. Torres-Hernandez was a foreman, he assigned himself a lower point total (typically 7 points), which was lower than the laborers he supervised and other foreman.[21]  Mr. Bhame further avers that over the past three years, Mr. Torres-Hernandez reported Jose de Jesus Castaneda as an active laborer on his crew and FSP paid Mr. Castaneda as a member of Plaintiff's crew through December 11, 2009, when in fact, Mr. Castaneda stopped working for FSP in September 2008.[22]  Mr. Castaneda typically was assigned a point value of 9.[23]

---

[16] Id. at ¶16.

[17] Id at ¶17.

[18] Id.  at ¶19.

[19] Id at ¶15.

[20] Id. at ¶18.

[21] Id. at ¶19.

[22] Id. at ¶20.

[23] Id.

According to Mr. Bhame, Mr. Torres-Hernandez was signing, cashing and/or depositing Mr. Castaneda's checks into Mr. Torres-Hernandez's personal checking account.[24]

In addition, on November 14, 2009, while employed by FSP, Mr. Torres-Hernandez suffered a compensable injury and received workers' compensation benefits including wage loss and medical benefits.[25]  In the documents submitted to the Florida Department of Financial Services, Division of Workers' Compensation, it was represented that Plaintiff was a foreman and he worked 40 hours per week.[26]

### Opt-In Plaintiffs

The opt-in plaintiffs all assert that they are similarly situated to Mr. Torres-Hernandez.[27]  The six opt-in plaintiffs, who submitted almost identical declarations, aver that they worked for FSP as laborers and were paid on an hourly basis.[28]  While they aver that FSP is a company with locations in Nevada, Arizona, South Carolina, Texas, Georgia, and Florida, none of the opt-in plaintiffs identify which branch location of FSP where they worked or even the state where they worked.[29]  The last numbered paragraph of the Declarations states that it was "translated from English to Spanish."

---

[24] Id. at ¶21.

[25] Id. at ¶26.

[26] Id.

[27] Docs. 12-15, 28.

[28]  Declarations of Jose Burgos; Tomas Garcia; Ernesto Anguiano; Enoe Rosales; Raul Salas; and Alfredo Romero at ¶8.

[29] Id. at ¶4.

FSP has offered sworn evidence that at least eleven of the twenty opt-in plaintiffs performed services for companies other than FSP; at least one never worked for FSP;[30] and at least four worked as foremen for FSP.[31]  FSP has also offered evidence that two of the opt-in plaintiffs are confused as to whether they are involved in this litigation.[32]

## II.  DISCUSSION

Plaintiffs seek conditional class certification under §216(b).[33] While §216(b) does not expressly address class actions, courts in the Eleventh Circuit have employed a two-tiered analysis in evaluating the appropriateness of class certification under §216(b). First, during the early stages of the litigation, courts apply a lenient standard, requiring a plaintiff to show only that similarly situated persons exist that may wish to join the suit.[34] After conditional class certification is granted, at a later stage in the litigation, usually when discovery is nearly complete, the Court can then determine if class certification or decertification is appropriate at that time.[35] The decision on

---

[30] Supplemental Bhame Declaration at ¶9.

[31] Declaration of Margarito Guerrero at ¶18.

[32] Supplemental Bhame Declaration at ¶¶ 4-5.

[33] Section 216(b) class actions differ from F. R. Civ. P. 23 class actions in that, under §216(b), a person who wishes to join the collective action must affirmatively "opt-in" by filing written consent with the Court. Under F. R. Civ. P. 23, a person must affirmatively "opt-out" if he/she wishes to abstain from the lawsuit. 29 U.S.C. §216(b); see also Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208, 1216 (11th Cir. 2001).

[34] Hipp at 1216-1218.

[35] Id.

conditional class certification under §216(b), however, is entirely within the discretion of the district court.[36]

In order for the Court to facilitate notice in a § 216(b) case the plaintiff must demonstrate: (1) the existence of other employees who desire to "opt-in", and (2) that those employees are "similarly situated".[37] The Court will address each of these requirements in turn.

With respect to the first prong, Defendant contends that the declarations filed by Plaintiff and the corresponding Notice of Consent to Join forms should be stricken for lack of authentication.  Witness testimony translated from a foreign language must be properly authenticated and any translation must be shown to be an accurate translation done by a competent translator.[38]  Here, there is no dispute that Plaintiff and the six opt-in plaintiffs who filed Declarations have limited English language skills.  The final paragraph of each of the Declarations simply states: "[t]his Declaration was translated from English to Spanish." There is, however, no mention of who translated the document and whether it is an accurate translation.  Likewise, these same Declarants submitted Notice of Consent to Join forms written in English without any attestation as to whether the document was translated or whether it had been explained to the opt-in plaintiffs in a language they understand. This deficiency raises some authenticity

---

[36] <u>Hipp</u> at 1219.

[37] <u>Dybach v. State of Fla. Dept. Of Corrections</u>, 942 F.2d 1562, 1567 (11th Cir. 1991.).

[38] <u>Jack v. Trans World Airlines</u>, 854 F.Supp. 654, 659 (N.D. Cal. 1994)(citing Fed.R.Evid. 604 and 901.)

concerns, especially in light of the sworn evidence offered by FSP that two of the opt-in

plaintiffs expressed confusion as to whether they were even a part of this lawsuit.[39]

The Court does not need to strike the declarations to resolve Plaintiff's motion

because even if the declarations were properly translated and authenticated Plaintiff

has failed to establish that a class of other "hourly paid 'construction workers' or

'laborers' is similarly situated to the Plaintiff, as required under the second prong.

The Eleventh Circuit has held that a plaintiff requesting conditional class

certification under §216(b), must "show that he is suing his employer for himself and on

behalf of other employees 'similarly situated.'"[40] In making this showing, plaintiffs need

only show that their "'positions are similar, not identical,' to the positions held by the

putative class members."[41]  This "modest factual showing" is usually satisfied through

the filing of affidavits of potential class members.[42]  Although the similarly situated

standard is a low threshold, a showing of similarity requires more than generalized

allegations.[43]

Here, Plaintiff contends that he is similarly situated with the hourly paid

"construction workers" or "laborers" because (a) they all had the same or similar titles;

(b) they were all paid on a hourly basis; (c) they performed identical job duties on a day

---

[39] Supplemental Bhame Declaration at ¶¶4-5.

[40] Grayson v. K Mart Corporation, 79 F.3d 1086, 1096 (11th Cir. 1996).

[41] Id.(citations omitted.)

[42] Realite v. Ark Restaurants Corp., 7 F. Supp.2d 303, 306-307 (S.D.N.Y. 1998); see also Garner v. G.D. Searle Pharmaceuticals & Company, 802 F.Supp. 418, 422 (M.D. Ala. 1991).

[43] Hipp, 252 F. 3d at 1219 (citing Grayson, 79 F.3d at 1097).

to day basis for Defendant; and (d) they all worked over forty (40) hours in one or more workweeks for Defendant and were not paid their complete overtime compensation.[44] Plaintiff of course has the burden of establishing that the Plaintiff is similarly situated to the potential opt-ins. A review of the declarations submitted by the parties discloses that Plaintiff has not established any of these purported similarities and instead has raised more questions as to the suitability and similarity of the named Plaintiff to the potential opt-in class.

At the most basic level, the Plaintiff has failed to establish that he is similarly situated because the record is disputed as to what job Plaintiff performed.  While Mr. Torres-Hernandez asserts in a form declaration (which is identical to the other declarations and suffers from the same deficiencies in translation and authentication) that he was a laborer, FSP has adduced sworn evidence from Mr. Bhame and two FSP superintendents that Plaintiff worked as a foreman during the entire course of his employment with FSP.[45]  As evidence supporting Mr. Bhame's sworn statement that Mr. Torres-Hernandez was a foreman, Mr. Bhame avers that Plaintiff received health insurance benefits as a part of his compensation package; and that while such benefits were provided to some foremen, they were never provided to laborers.[46]  Finally, Plaintiff was identified as a foreman in documents submitted to the Florida Department of Financial Services, Division of Workers' Compensation for Plaintiff's worker's

---

[44] Doc. 20 at 4.

[45] Bhame Declaration at ¶11;  Doc. 31-7 (Declaration of Margarito Guerrero at ¶18; Declaration of Pablo Sauli at ¶18.)

[46] Bhame Declaration at ¶23.

10

compensation claim.[47]   As such there is a very serious question as to whether the job performed by Mr. Torres-Hernandez would even be in the proposed class. At the stage of the litigation, while conditional certification is not a heavy burden, the Plaintiff, nonetheless, must demonstrate that he had similar job requirements to those individuals in the proposed class he would represent. Plaintiff has clearly failed to do so - at least at this juncture in the case.

Plaintiff's request also suffers from other fundamental problems. The entire premise of Plaintiff's claim is that he and the other opt-in plaintiffs were hourly paid 'construction workers' or 'laborers' and entitled to time and half of their hourly rate of pay in overtime wages.  FSP, however, has submitted unrebutted sworn evidence that FSP employees – including laborers and foremen – were paid a "piece-rate" for the plastering work performed on each individual house.  If FSP employees were in fact paid a "piece-rate" then an entirely different method for calculating the weekly hourly rate would be used entitling FSP employees to "half-time" for overtime and not time and a half as requested in the Complaint.[48]

Moreover, because the "piece-rate" payment decisions were made at the local level overtime claims among the proposed class would differ significantly form location

---

[47] Bhame Declaration, Exhibit 1.  At the hearing, over no objection, Defendant submitted additional records from the worker's compensation proceedings.

[48] 29 CFR §778.111 governs pieceworkers and provides that the hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and other sources and any sums paid for waiting time or other hours worked.  That sum is divided by the number of hours worked in the week for which such compensation was paid.  This yields the pieceworker's "regular rate" for the week.  For overtime, the piece-worker is entitled to be paid, in addition to his total weekly earnings at the regular rate, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week.

to location - and possibly even from job to job.  FSP has adduced unrefuted evidence that foremen have complete discretion to assign "points" to laborers and themselves, which in turn, determines how they are compensated for each job.  The points assigned vary based on the type of labor being performed (i.e. scaffold, lath or stucco), the experience and skills of the laborer, the budget for the house, the locale, and the discretion of the foreman.  Thus,  even if there was a common practice or corporate policy, by necessity, it would have been limited to each foreman and would not appear to be a practice that occurred statewide.  Although, the existence of a common policy or plan is not a mandatory requirement in the Eleventh Circuit for conditional certification, nonetheless, the existence of a common policy or plan is relevant to the Court's exercise of its discretion in granting conditional certification because the underlying rationale for granting a collective action is to preserve judicial economy.[49]

Further, although Plaintiff seeks to certify a class of employees within Florida, he has not alleged in his Complaint that he worked in Florida, nor has he offered evidence that any of the opt-in plaintiffs worked for FSP in Florida. Indeed, Plaintiff's supporting Declarations simply state that the Declarant "worked for [FSP], a company with locations in among others, Nevada, Arizona, South Carolina, Texas, Georgia, and Florida." Thus, Plaintiff has failed to establish that Plaintiff or any of the opt-in plaintiffs are even members of the proposed class.

FSP has also identified factual challenges specific to Mr. Torres-Hernandez that would not be applicable to other members of the proposed class.  First, FSP challenges

---

[49] Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 171-73, 110 S.Ct. 482 (1989.)

whether Mr. Torres-Hernandez is an appropriate plaintiff.  FSP has adduced unrefuted evidence suggesting that Mr. Torres-Hernandez submitted reports for payroll processing for a laborer listed as Jose De Jesus Castaneda over the past three years even though Mr. Castaneda stopped working for FSP in September 2008; and that Mr. Torres-Hernandez signed, cashed and/or deposited Mr. Castaneda's checks into his personal checking account.  According to FSP, Mr. Torres-Hernandez assigned himself a point value of 7, which was lower than other Foreman and the laborers he supervised. Defendant suggests that Plaintiff effectuated this scheme because his wages were subject to a child support garnishment and he was attempting to lower the amount of compensation subject to garnishment. While the Court need not resolve this issue at this stage of the litigation, the fact remains that Defendant has raised several material issues regarding alleged fraudulent conduct of Mr. Torres-Hernandez, resolution of which would require an individualized factual inquiry of affirmative defenses, specific to Mr. Torres-Hernandez, which could bar Mr. Torres-Hernandez from recovery.

Likewise, FSP argues that judicial estoppel should bar Mr. Torres-Hernandez from asserting positions inconsistent with the positions he took in his workers compensation claim.  FSP has adduced evidence that in the wage statement submitted to the Florida Department of Financial Services, Plaintiff is identified as a foreman and shows that he works eight (8) hours per day, five (5) days per week for a total of forty hours.   This contradicts Plaintiff's Complaint and Declaration in which he states that he "typically worked 6 or 7 days per week, and between 65-70 hours per week."[50] Again,

---

[50] Torres-Hernandez Declaration at ¶9.

13

whether or not judicial estoppel should bar Mr. Torres-Hernandez's claims in this action is an issue the Court need not address at this stage, but is an issue fact specific to Mr. Torres-Hernandez and as such suggests that Mr. Torres-Hernandez may be more dissimilar to the proposed class than similarly situated to the proposed class.

Accordingly, for these reasons, the Court has no difficulty concluding that Plaintiff has failed to meet even the minimal burden of demonstrating that he is similarly situated to the proposed class to support his request for conditional certification. The Court, therefore, concludes that Plaintiff has failed to establish that this action is suitable as a §216(b) collective action. Accordingly, Plaintiff's Motion To Conditionally Certify (Doc. 20) should be **DENIED**.

During the hearing –  and after the Court advised counsel that the Court would recommend that the Motion to Conditionally Certify should be denied –  counsel for Plaintiff made an *ore tenus* request to amend the Complaint to include as parties, instead of merely as opt-ins, the individuals who had filed consents to join.  Without prejudice to the right of Defendant to respond as necessary to any amended complaint, the Defendant did not object to the request for leave to file an amended complaint. Accordingly, Plaintiff's *ore tenus* request to file an amended complaint is due to be **GRANTED**. The Defendant may file an amended complaint within **twenty (20) days**.

Lastly, at the hearing the Court also addressed Defendant's Motion To Stay Discovery As To Opt-Ins Pending Resolution Of Motion To Conditionally Certify Or, In The Alternative, Motion For Protective Order. (Doc. 33.)  Plaintiff served separate sets of Interrogatories, Requests for Production, and Requests for Admissions on behalf of

each of the twenty opt-in plaintiffs.  Defendant requested that the Court enter an order

staying all opt-in discovery requests pending resolution of the Motion To Conditionally

Certify. Alternatively, the Defendant requested that the Court enter a protective order as

to all twenty sets of opt-in discovery in the event the motion for conditional certification

is denied. Because Plaintiff's Motion To Conditionally Certify is due to be denied the opt-

ins are not parties to this case and therefore cannot serve discovery requests at this

time.

Accordingly, Defendant's Motion for Protective Order is **GRANTED**. Other than

the discovery requests served by Mr. Torres-Hernandez –  who at this juncture is the

only named Plaintiff –  Defendant shall not be required to respond to the discovery

requests served in the name of the proposed opt-in plaintiffs. This protective order is

without prejudice to the right to serve discovery on behalf of any additional Plaintiffs

named in the Amended Complaint.

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's Motion

To Conditionally Certify Collective Action And Facilitate Notice To Potential Class

Members (Doc. 20) be **DENIED** without prejudice.

**IN CHAMBERS** in Ocala, Florida, on July 1, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:

    The Honorable Wm. Terrell Hodges
    Senior United States District Judge

    Counsel of Record